[No. 14571.  Department One.  April 15, 1918.]

*In the Matter of the Estate of* M. F. JONES.[1]

WILLS—ATTESTATION—EVIDENCE—SUFFICIENCY. A will is not sufficiently attested within the requirements of Laws 1917, p. 649, § 25, requiring it to be signed by the testator in the presence of two witnesses, who shall subscribe their names in the testator's presence, where it appears that it was not signed in the presence of the witnesses, and was not signed by a witness in the scope of the testator's vision, and the name of one of the witnesses, who never saw the paper, was signed by his wife without his knowledge.

Appeal from an order of the superior court for King county, Mackintosh, J., entered October 29, 1917, in probate, rejecting probate of a will. Affirmed.

*H. E. Foster,* for appellants.

*Karr & Gregory* and *H. G. Sutton,* for respondent.

[1]Reported in 172 Pac. 206.

Ellis, C. J.—Appeal from an order of the superior court for King county rejecting probate of a writing purporting to be the last will and testament of M. F. Jones, deceased.

At the time of his death, October 8, 1917, decedent was a resident of King county where he died. He left a widow, Isabella Jones, but no children. The widow, producing a paper purporting to be a copy of his will, was by the court appointed special administratrix pending search for the original. On October 16, 1917, upon the petition of Charles W. Brooks and Marion Johnson alleging that they were named in the will as executors, the court ordered that citation issue commanding Isabella Jones to produce the will in court on October 18, 1917, submit to examination, and show cause why it should not be admitted to probate. At the time stated, she produced a writing dated December 13, 1915, purporting to be the last will and testament of decedent, and a full hearing was had as to its execution.

Mrs. Jean Demar Snyder, whose name appeared as that of a witness, testified, in substance, that, at some time in the fall or winter of 1915, Mr. Jones called at her home, produced the paper, told her it was his will and asked her to sign it which she did; that no one else was present at the time; that Mr. Jones did not sign the instrument in her presence; that she did not know his signature and could not say that it was on the paper when she signed it.

A Mrs. Bassett, wife of William N. Bassett whose name appears as that of the other attesting witness, testified that Mr. Jones came to the back door of the Bassett home and asked for Mr. Bassett; that she told him Mr. Bassett was not at home and he said "I have a paper here to sign;" that she asked him to wait for

her husband's return and he said, "No, I don't think I will wait, you sign it for Mr. Bassett in his name;" that she invited him into the house but he declined, remaining on the back porch while she passed through the kitchen into the dining room where she signed the paper as follows: "Mr. Wm. N. Bassett." She further testified that Mr. Jones did not and could not see her sign the paper because he was on the back porch and the door between the kitchen and dining room was closed; that she did not know whether the name either of Mr. Jones or of Mrs. Snyder was on the paper at the time as it "was not opened up;" that she did not know what the paper was until she returned it to Mr. Jones when he told her it was his will. She further stated that she did not know his signature and that he never asked her to sign the paper as an attesting witness. There was no one else present when she signed her husband's name.

William N. Bassett, when shown the paper at the hearing testified that he had never seen it before, that though his name appeared upon it he did not sign it, that Mr. Jones never requested him to act as a witness to his will, and that he, Bassett, knew nothing about the matter except what his wife told him one evening on his returning home. There was other evidence touching the mental capacity of the decedent but we deem it immaterial. This is not an action to contest a will. It is, in substance, an application for probate presenting only the questions of execution and attestation.

The trial court, being of the opinion that the instrument was not so attested as to entitle it to probate as a will, entered the order complained of. The petitioners Brooks and Johnson prosecute this appeal.

The existing statute governing the execution of wills was in force at the date of the death of M. F. Jones.

It is § 25, chapter 156 of the Laws of 1917, p. 649. So far as here material it reads:

"Every will shall be in writing signed by the testator or testatrix, or by some other person under his or her direction in his *or her* presence, and shall be attested by two or more competent witnesses, subscribing their names to the will in the presence of the testator *by his direction or request.*"

It is in every material particular identical with the prior law, Rem. Code, § 1320, the only change being the addition of the words which we have italicized. The change is immaterial. Both require attestation by the witnesses and "attestation" is "The act of witnessing an instrument in writing, at the request of the party making the same, and subscribing it as a witness." Bouvier's Law Dictionary (Rawle's 3d Revision); Black's Law Dictionary (2d ed.). Attestation is not a mere form. It has a vital object. That object is to certify that the will was acknowledged in the presence of the witness and that the signature was genuine. *Keely v. Moore,* 196 U. S. 38.

It requires no more than an adversion to the facts to show that neither of the purported witnesses attested the instrument here involved in the manner required by the statute. Though Mrs. Snyder signed in the presence of the decedent and at his request, she did not see him sign it, he did not acknowledge his signature to her, she did not know his signature, she could even not say that his name was on the paper when she signed it.

William N. Bassett, the only other person whose name appears as that of a witness, did not sign the instrument, was never requested to sign it, had never even seen it prior to the hearing. Mrs. Bassett did not sign as a witness, did not intend to sign as a witness, was never even requested to sign as a witness.

She was requested to sign "for Mr. Bassett in his name." There are authorities which hold that a witness *intending* to sign as such, may subscribe in any way intended to identify *himself* as a witness. *In re Walker's Estate,* 110 Cal. 387, 42 Pac. 815, 52 Am. St. 104, 30 L. R. A. 460; 30 Am. & Eng. Ency. Law (2d ed.), p. 601. But the authorities are uniform that the witness must sign *animo attestandi.* *Keely v. Moore, supra; Burton v. Brown* (Miss.), 25 South. 61; *Peake v. Jenkins,* 80 Va. 293; *Boone v. Lewis,* 103 N. C. 40, 9 S. E. 644, 14 Am. St. 783; *Moale v. Cutting,* 59 Md. 510.

Moreover respondent contends, and we think soundly, that Mrs. Bassett never signed even her husband's name in the presence of the testator within the meaning of the statute. The act was not within the scope of the testator's vision from his actual position. *Reynolds v. Reynolds,* 1 Speers (S. C.) 253, 40 Am. Dec. 599; *Drury v. Connell,* 177 Ill. 43, 52 N. E. 368; *McKee v. McKee,* 155 Ky. 738, 160 S. W. 261; *International Trust Co. v. Anthony,* 45 Colo. 474, 101 Pac. 781, 22 L. R. A. (N. S.) 1002; *Reed v. Roberts,* 26 Ga. 294, 71 Am. Dec. 210; *In re Downie's Will,* 42 Wis. 66; *Calkins v. Calkins,* 216 Ill. 458, 75 N. E. 182, 108 Am. St. 233, 1 L. R. A. (N. S.) 393. Cases sustaining this view might be cited indefinitely, but inasmuch as Mrs. Bassett did not sign as a witness at all, we shall not further pursue the subject.

There is some doubt as to the appealability of this order, but since all the evidence is here and both sides have requested a decision on the merits, we have entertained the appeal, reserving that question.

Affirmed.

Parker, Webster, Main, and Fullerton, JJ., concur.